Scott, J.
The errors relied on, in argument, as ground for ■he reversal of the judgment of the district court in this case, relate mainly to the charge of the court.
Exception was taken upon the trial to the admission in evidence of the return of the sheriff upon the writ of execution, which set out a levy under the writ upon “ 600 tuns of railroad iron; ” and also to the admission of parol evidence for the purpose of identifying the particular iron levied upon, and, in connection with this, the charge of the court upon that subject is claimed to be erroneous.
The objection to the return seems to be placed on the ground that the description of the property levied on is not sufficiently definite. But we think the description reasonably certain. It states the article levied on, its kind, and quantity; and in many cases it would be difficult for the officer to do more. And parol evidence is always admissible for the pur *116 pose of applying a verbal description to its proper subject, by way of identification. We think there was no error in the admission of the evidence or the charge of the court on this subject.
Nor do we think the court erred in holding that the sheriff might make a valid levy upon 600 tuns of iron, composing part of a larger quantity, and take possession of the whole for the purpose of holding, separating, and disposing of the part levied on. The validity of a levy thus made, would not, we apprehend, be affected by a neglect on the part of the officer, to make the proper separation, within a reasonable time, though he might thereby incur liability in respect to the property not levied on, and unreasonably retained in his possession. To all this portion of the charge we see no just ground of exception.
Exception is taken to the' next portion of the charge, which is said to interpret the agreement of August 28,1855, as creating a lien merely, in favor of McOready, Mott & Co., whereas that agreement gave said firm an entire and absolute power of sale, privately, or publicly, and thus enabled them to transfer as well the title, as thp possession of the iron. But •we do not understand the charge of the court as being intended to declare definitely the character and extent of the interest in the iron, which passed to McOready, Mott & Co. by the agreement of August 28, 1855. The court was not asked to pass upon the question, and certainly did not so do, in direct terms. The claim of that firm upon the iron is incidentally termed a lien in the charge, as it is also in the plaintiffs’ own pleadings. But the court recognized that claim, by wnatever name it might be called, as sufficient in the hands of McOready, Mott & Co., or their Iona fide assignee, while retained, to defeat any rights set up under defendant’s levy. So long as such effect was given to the claim, the plaintiffs have no reason to complain that the court, following their own example, called it “ a lien.” There is language in the close of the same paragraph of the charge, from which it might be inferred that the court regarded White & Co. as, at best, but the holders of a mortgage lien, which would be invalid unless *117 accompanied by actual possession of the property, or unless the mortgage was filed in the office of the recorder of Cuyahoga county. If such a holding were distinctly apparent in the charge, its correctness might well be drawn in question, for various reasons. The iron seems to have been in transitu, at Cleveland, destined for a point in Indiana; the mortgagor was a corporation of that state; the mortgagee resided in New York ; and the mortgage was executed there ; and the mortgagor not having actual possession of the property, could make no actual delivery to the mortgagee.
But as this question does not distinctly arise, either upon the instructions asked, or those given in the case, we prefer to leave it open.
Further exception is taken to the same paragraph of the charge, as amounting to a declaration that McCready, Mott & Co. could not transfer their title except for a valuable consideration in money, actually paid.
This part of the charge is, perhaps, justly liable to verbal criticism; but we think the language of the court will admit of a different construction from that put upon it by counsel. We understand the charge as importing no more than this : that if the consideration of the transfer of the claim of Mc-Cready, Mott & Co. was the payment of its amount, made through White & Co.; then that the transfer would be valid as against the creditors of the railroad company, provided the payment was actually, and in a substantial sense, a payment made by White & Co., and not with funds belonging wholly to the railroad company, in which White & Co. had no interest. And that the railroad company could not, as against its creditors, create a valid lien upon its property, in favor of White & Co., without an actual valuable consideration. And if this construction of the charge be correct, we see no objection to it.
The next exception to be considered, calls in question the correctness of the instructions given in charge, in relation to the effect of the letter of White & Co. addressed to Gruyles & Bash, dated, January 14, 1856, and the communication of its contents by the latter to the railroad company. By that *118 letter White & Co. had said to the consignees, Guyles & Bash; “ you may release to the Cincinnati and Chicago Railroad Company the iron assigned to us by McCready, Mott & Co., and that belonging to the road, as all interests have been settled.”
And the court told the jury that this letter, “ together with the communication by Guyles & Bash to the railroad company of the fact of their receipt of such letter, and that they held said iron for said railroad company, would operate in law as a relinquishment of their possession of said iron; and although no actual delivery had been made by said consignees to the railroad company, still creditors of said company, having knowledge of said letter, and such release of their possession of said iron, and that said Guyles & Bash held the same for said railroad company, might acquire a valid lien upon the same by levy thereon.”
Beyond doubt, this letter, regarded as an admission, made by White & Co. under whom the plaintiffs claimed title, was pertinent and strong evidence, tending to prove that the claim of White & Co. had been adjusted and satisfied by the railroad company, and that the absolute ownership and possession of the iron was thenceforth in the railroad company, so far as White & Co. were concerned. But, regarded as a mere admission, the law would give it no conclusive effect. As mere evidence it might be explained; it might be shown to have been written under a mistake of facts. It might be read in the light of the agreement entered into but two days before its date, between White & Co. and the railroad company, by which White & Co. had agreed to let the iron be moved from Cleveland to Anderson in Indiana, through the agency of the railroad company, but in the name of White & Co., and subject at all times to their control, and without prejudice to their rights; and had promised and agreed to give orders to their agents at Cleveland to let the company so move it. This agreement had been read in evidence, and there was only testimony tending to show that the letter of the 14th January, was written and sent in pursuance of said agreement and not otherwise, But this explanatory evidence, with the light which it might *119 reflect on the intentions of the parties, was in effect withdrawn from the consideration of the jury, by the legal effect which the court gave to the letter itself, in favor of a levy made at the instance of creditors of the company, “ having knowledge of said letter,” and of the action of Gruyles & Bash, in pursuance thereof.
As the court made the creditor’s knowledge of the receipt by the consignees, and their consequent action thereon, a condition, upon which the validity of his subsequent levy would depend, it would seem that the court regarded the receipt of the letter, and the consequent circumstances, as operating by way of estoppel, so as to preclude White & Co. from denying the absolute ownership and possession of the iron by the railroad company. Were White & Co. so estopped?
The rule in reference to what are called estoppels in pais, is thus laid down in the leading case of Pickard v. Sears, 6 Ad. & El. 474: “ Where one by his words or conduct willfully causes another to believe in the existence of a certain state of things, and induces him to act on that belief, or to alter his own previous position, the former is concluded from averring against the latter a different state of things, as existing at the same time.” This rule was qualified or explained in the case of Freeman v. Cooke, 2 Exc. Rep. 654, in which it was held that “ by the term willfully, in the rule, we must understand, at least, that the party means his representation to be acted upon, and that it is acted upon accordingly.” In a recent case, in the house of lords (Jordan v. Money, 5 H. of L. Cas. 212), it was said by the lord chancellor, “ I think it is not necessary’that the party making the representation should know that it was false ; no fraud need have been intended at the time. But if the party has unwittingly misled another, you must add that he has misled another under such circumstances, that he had reasonable ground for supposing that the person whom he was misleading, was to act upon what he was saying. It will not do if he merely said something, supposing it to be quite right, and then that some stranger, having heard and acted upon it, should afterward come to him to make it good.”
*120 The same principle is established by the case of Howard v. Hudson, 75 E. C. L. R. 10 (2 El. & Bl.), and is fully sustained by the general current of American authorities. Nichols v Arnold, 8 Pick. 172; Foster v. Newland, 21 Wend. 94; Crockett v. Lashbrook, 5 Monroe, 530; Davis v. Thomas, 5 Leigh, 1; Bank v. Wollaston, 3 Harrington, 90; Hicks v. Cram, 17 Verm. 449; Kinney v. Farnesworth, 17 Conn. 355; Commonwealth v. Maltz, 10 Barr. 527; Copeland v. Copeland, 28 Maine, 525 ; Otis v. Sill, 8 Barb. Sup. C. 102 ; Taylor v. Zepp, 14 Missouri, 482.
The application of this rule, thus explained, to the present case, shows clearly that the letter of White & Co. does not preclude them or their assignees, from showing the truth, as against the present defendant. The letter was not addressed to him, nor to Vallette, at whose instance, and for whose benefit the execution was levied. It was merely instructions to Huyles & Bash, and its purpose did not contemplate the exhibition of it to the creditors of the railroad company. It came to 'Vallette’s knowledge, only by his own industrious research. The information which he thus acquired, and relied on in his subsequent action, imposed no obligations of any kind, on White & Co., and conferred no rights upon Vallette either as against White & Co. or the railroad company. As against White & Co. his right to levy on the iron would depend upon the actual state of facts, and not upon information which he received from others in regard to the facts.
But supposing the fact to have been, as there was evidence tending to prove, that this letter of White & Co. was inadvertently, or through mistake, couched in terms which would not fully and truly express the intention of the writers, or which would represent the facts of the case in a false light, and justify the belief on the part of the consignees, that White & Co. had no further claim on the iron; and the consignees, being thus misled by the negligence or mistake of White & Co., gave notice to the agents of the railroad company that the iron would be thenceforth held for them, would these facts operate in law, as a constructive transfer of the possession of the iron from White & Co. to the railroad company ? Would they sc *121 operate, irrespective of the intentions of the parties to the transfer, and the contracts subsisting between them ?' Would such mistake give the railroad company a right to claim \ possession of a character inconsistent with the express terms of the contract which the letter was intended to carry out ? I think it clear, that notwithstanding the improvident or mistaken language of the letter, the railroad company could honestly assume only such possession, and for such purposes, as would be consistent with the terms of its contract with White & Co. If that contract made the company a mere bailee, for the purposes of shipment and storage in the name of White & Co., it could not honestly take a possession of a different character. The iron, when levied on, was in the actual possession and custody of the consignees, and I know of no rule of law, which would cast upon the railroad company a constructive possession, of an unqualified character, which it could not under the circumstances honestly assume.
But if the railroad company could claim no advantage from this mistake,- do its creditors occupy any better position than itself? Except in cases of fraud, a creditor can, in general, and as against third parties, assert only the rights of his debtor. The lien of his levy can not go beyond the property of his debtor. And where the liability to levy depends upon a question of possession, no good reason is perceived for permitting a mere mistake, to work a constructive change of possession, and to give to that possession a character, in favor of the creditors, which the debtor himself would have no right to claim for it.
We think the district court erred in giving to the letter of White & Co., with the subsequent notice given by the parties who received it, to the railroad company, an absolute legal effect as a relinquishment of the possession of the iron’by White & Co., which would render the same liable to be levied on by the creditors of the railroad company, irrespective of any mistake of facts under which the letter might have been written, or of the actual rights of the parties as defined by subsisting contracts.
*122 The judgment of the district court will therefore be re« versed, and the cause remanded.
Peck, C J., and Gtiolson and Brinkerhoee, J J., concurred. Ranney, J., did not sit in the case.